**HARTWELL, Admr, Etc et v SCHLARB, Exr, Etc et**

Ohio Appeals, 7th Dist, Mahoning Co

Decided March 9, 1934

## OPINION

By THE COURT

As before stated, the cause was heard in said Court of Common Pleas and resulted in a judgment in favor of the defendants in the court below, and it is to be readily observed that the only question here is whether or not the language in the warranty clause of said deed, as above set out, created a trust estate in Rema Bates.

It is well recognized that there are two kinds of trusts, express and implied, and implied trusts are divided into resulting and constructive trusts. It therefore becomes necessary to determine the force and effect of the above provision and as construed or determined by the testimony adduced upon the trial below. First it may be observed that it is not claimed that Rema Bates had any considerable amount of property at the time of her marriage to John Bates. It. is disclosed and practically admitted that John Bates paid the sum of $2400.00 and the sum of $1,000.00 upon the purchase price of said property, and that these payments were from his own funds. It is claimed that Rema Bates paid the sum of $200.00 "earnest money" at the time of the bargain and sale. However, there is nothing to show where the $200.00 came from, or whether it was furnished by John W. Bates. It is, therefore, a fair conclusion, from all the testimony in the case, that John W. Bates furnished practically all of the purchase price of said property.

It is also apparent that if a trust relation was creaed between John W. Bates and his wife, that it was created at the time of the making of the deed of conveyance. Therefore, it has all of the principles of an express trust, as declared in **Fleming v Donahue, 5 Ohio, 255,** in which cause the opinion of Wright, J., is of interest in this connection.

It is true that the above paragraph of the deed is somewhat imperfectly constructed, and yet it is sufficiently definite and clear to disclose what the contracting parties intended. First is the warranty clause with reference to encumbrance, and then in the latter part it is provided, "In the case of the death of the grantee, that this property shall revert to John W. Bates, who also has a life interest in this property." It is clear that two things were intended in the foregoing; that is, that at the death of the grantee, Rema Bates, her estate would be concluded, and that concurrent with her life estate John W. Bates was to have a life estate in this property, but still more is included in said paragraph,

and it is this, that the property shall **revert** to John W. Bates at the death of Rema Bates.

Certainly no other meaning can be attached to the foregoing. "Revert" means but one thing, and that is to go back to John Bates, which might indicate that John Bates had furnished the purchase price of the property, and that because of that fact the property was to go back or revert to him. See Perry on Trusts, §95. Webster's International Dictionary, under "Law" defines "revert" as follows:

"To return to the proprietor or his heirs or assigns, after the termination of a particular estate or reversion granted by him."

A trust may be created by parol and attach to a deed absolute on its face, but it is not necessary to resort to parol testimony to establish this trust, for the reason that it is clearly stated that the property shall **revert** to John W. Bates. It would have been wholly unnecessary to have included that clause if John W. Bates was to have only a life estate in said property.

Therefore, two things result from the foregoing; **First,** that at the death of the grantee the property should revert to John W. Bates; and **Second,** that John W. Bates had a joint life estate in the same with his wife, Rema Bates. There can be no question as to a valuable consideration for this trust, because it is not denied that John W. Bates paid at least $3400.00 of the purchase price of the same. Silverman's testimony establishes beyond question that the trust was established at the time of the execution of the deed. Therefore, the terms of the trust became certain and definite, and the proof is clear and convincing.

It is objected that parol testimony is not admissible to vary the terms of a written instrument. Such is not the instant case, because it is the written instrument itself which establishes an express trust and which creates a resulting trust in the beneficiaries of Rema Bates. After all, it may be said with confidence that the foregoing provision in said deed was so clear and plain as to leave no doubt as to the intention of these parties at the time of the purchase of the property, the payment of the purchase price and the receipt of the deed. All of the facts in the case so indicate. These parties were well advanced in years at the time of their marriage. Each had been previously married. It is not disclosed that Rema Bates brought anything into the new partnership, while it is shown that the husband furnished all,

and having in mind the necessarily short time that they might hope to abide together, a reason becomes readily apparent for John W. Bates attempting to preserve for his own beneficiaries the residue of this property at the time of the termination of the life estate by the decease of both parties.

Therefore, it follows that the finding must be in favor of plaintiff and a decree entered declaring a resulting trust in favor of the beneficiaries of John W. Bates, deceased.

FARR, POLLOCK and ROBERTS, JJ, concur.