**NORRIS, Plaintiff-Appellee v. NORRIS et, Defendants-Appellants.**

Ohio Appeals, Second District, Montgomery County.

No. 1714. Decided June 29, 1943.

294

George R. Murray, Dayton, for plaintiff-appellee.
Swaney & Creager, Dayton, Harry W. Vanneman, Columbus, for defendants-appellants.

**OPINION**

By HORNBECK, J.

This matter comes on upon motion of defendants-appellants to disaffirm the report of Clarence J. Stoecklein, Master Commissioner, filed in this Court November 17, 1942, and upon motion of the plaintiff-appellee to confirm said report and the separate findings of fact and law therein on all points of fact and law excepting the amount found due the plaintiff-appellee, which should be $9,641.92 with interest at 6% per annum on December 24, 1937, * * *.

This cause was tried as a chancery case in the Common Pleas Court and there referred to Mr. I. L. Jacobson, as referee, who made report favorable to the plaintiff and recommended a judgment in her behalf in the sum of $8300.00, with interest from the date of the filing of the petition. The trial judge approved and confirmed the report and entered judgment accordingly. From this judgment defendants noted an appeal to this Court on questions of law and fact. This Court on its own motion named a Master Commissioner who has filed his report, which is detailed and comprehensive and reflects careful and capable effort.

The plaintiff, in her petition, after setting up the facts as she claims them to exist, prays for a declaration of trust, for an inspection of the records of her former husband, defendant, J. Frank Norris, for an accounting, and for the setting aside of certain transfers of real estate made by said defendant to his mother Naomi C. Norris, defendant, then living. There is no prayer for a money judgment. The defendants, jointly answering, admit that plaintiff had turned over to defendant, J. Frank Norris, certain moneys but plead that they have been repaid to the plaintiff, with interest. Plaintiff replied denying that the moneys had been repaid to her.

The Master Commissioner found, first, that the plaintiff from 1920 to 1931, inclusive, advanced to the defendant, J.

Frank Norris, the sum of $8,101.92 of which sum said defendant repaid the plaintiff $200.00 in 1937, leaving the sum of $7,901.92 which the Commissioner finds the defendant has failed to repay to the plaintiff. He then considers whether or not the relationship between the parties, and when we refer generally to parties, we mean the plaintiff and defendant, J. Frank Norris, was that of trustee and cestui que trust or that of debtor and creditor, and finds that "plaintiff's fundamental contentions are fully corroborated by the admissions of the defendant, J. Frank Norris, himself and that an informal express trust has been established." The word "informal", no doubt, was employed as meaning oral. The Commissioner continuing says, "if for any reason it might be considered that the above established facts are too informal to constitute an express trust, the following facts are clear:

1. That the plaintiff did entrust her money to the defendant, J. Frank Norris, and he was to keep a book record thereof.

2. That the relationship between the parties was a confidential one (husband and wife).

3. That the defendant was to invest said money for plaintiff's benefit.

4. That it was to be returned to her upon demand.

5. That plaintiff had faith and confidence in the defendant that he would do nothing to impair her interests.

6. He did impair her interests when he divested himself of all his property—or, at least attempted to do so."

The Master Commissioner makes no definite finding upon the six factual determinations heretofore set forth, but it is obvious that he concludes that, if for any reason the court did not adopt his opinion that an express trust has been proven, there is the basis for a decree that a constructive trust arose upon the established facts.

At the time the suit was instituted and at the time of the trial in the Common Pleas Court, many transactions were carried into the record which established to a point of certainty that the defendant, J. Frank Norris, although at time of trial claiming to be insolvent, had made numerous withdrawals of his accounts from U. S. Postal Savings accounts and from Building and Loan accounts, had transferred his interest in accounts aggregating thousands of dollars to his mother, and that he had deeded real estate of the value of $29,200 to his

mother, all without the knowledge of the plaintiff and with a purpose to conceal the transactions from her; that no consideration moved from his mother to said defendant, J. Frank Norris, for said transfers. In fact, the conduct of the defendant, as projected from the record and the exhibits, bears all the indicia of evasion, double dealing and purpose to perpetrate a fraud on plaintiff.

After the cause had been adjudicated in the Common Pleas Court, Naomi C. Norris, mother of J. Frank Norris, died, leaving him as her sole survivor and heir-at-law and thus, as the Commissioner points out in his report, some of the questions as to the form of relief to be granted to the plaintiff were removed. The Commissioner makes the following conclusions of law:

That the plaintiff should recover from the defendant the sum of $7,901.92 with interest at 6% per annum from December 24, 1937, being the date defendant repudiated his trust * * *.

That a deed from J. Frank Norris to Naomi C. Norris of certain described lots in the city of Dayton, Ohio, was conditionally delivered only to Naomi C. Norris and that the acquisition of title by her was defeated by her death and that said title is in J. Frank Norris.

That, had Naomi C. Norris continued to live the plaintiff would have been entitled to have a constructive trust impressed upon the real estate in her hands but that such relief is now unnecessary in view of her death because the plaintiff now has ample security for restitution of her trust funds out of the real estate owned by him and finds that an equitable lien should be declared in favor of the plaintiff in the sum found due her, together with interest and costs of this procedure.

In this Court all rights of the appellants are merged in the appellant, J. Frank Norris, to whom we hereinafter refer as the appellant, the defendant, or the husband.

Many and voluminous briefs have been filed. We do not propose to add to the literature of this case extended discussions of all of the manifold propositions advanced against and for the respective claims of the parties upon their motions, but we will, insofar as possible, consider some of the principal legal questions advanced under the headings set out in appellant's briefs.

## FORM OF ACTION.

It is urged by the appellant that the action is for money

only; that, early in the proceedings in the Common Pleas Court the defendants insisted upon their right to a jury trial which, over their objections, was denied. Whatever the effect of the action of the defendants in the trial court, we are satisfied that, by electing to appeal to this Court on questions of law and fact, the appellant has thereby shaped the course of his appeal and cannot in this Court be heard to say that the cause was at law and not in chancery. He has invoked the chancery appellate jurisdiction of this Court and availed himself of the right of a de novo hearing. That right follows only if a judgment was entered in the trial court in a chancery proceeding. When he appeals on law and fact, he concedes that the decree from which he appeals is in chancery.

It is urged that the claim of the plaintiff was for money because she testified she wanted a money judgment. This is but a disconnected part of her whole statement, but it makes no difference what the plaintiff's concept of the form of legal relief desired. It is to be determined by the theory adopted in her pleadings, the nature of the relief sought, and the proof in respect thereof. As she says, in part, what she wanted was her money back, but when her case was instituted her counsel elected to proceed upon the equitable theory and at that time the chancery powers of the court were invoked in several particulars before the ultimate relief sought could be obtained, namely, the return of her money. Scott on Trusts at Section 41 says,

"As Maitland has pointed out the civilian has great difficulty in understanding what we mean by a trust."

We are cited to **Wall v Dayton Federation Co., 121 Oh St 334,** which, on appeal, was dismissed in this Court and our action affirmed in the Supreme Court. In that case the plaintiff, Anna K. Wall, at all times insisted that her suit was in chancery. From an adverse judgment of the Common Pleas Court she prosecuted an appeal under the old appellate procedure. This court held that her cause of action was not in chancery but at law and dismissed her appeal. **Gunsaulus v Pettit, 46 Oh St 27,** also cited, holds that the cause of action there plead was for money only. The facts are somewhat similar to those in the instant case, but the form of plaintiff's petition is not set forth with enough particularity to enable us to determine the extent to which the petition sought equitable relief.

An examination of the amended petition in this case is convincing to a point of demonstration that it is not an action for money only.

## CONSTRUCTIVE TRUST.

It is next urged that the Master Commissioner is unsound in his report because he makes a finding that a constructive trust may be decreed in favor of the plaintiff. The Master Commissioner makes no such finding nor does he recommend it to this Court. As far as he goes is to say that this Court might find that it would be justified in entering such a decree.

## · SUIT UPON EXPRESS TRUST.

The pleadings disclose that, as to the appellant, the plaintiff has made her declaration upon an express trust. Being in accord with the finding of the Master Commissioner that her claim has been established and that the record supports the finding and report, we see no sufficient reason to devote attention to the question whether or not under the facts appearing a constructive trust could be declared as between the plaintiff and the defendant.

The briefs have become so numerous and the discussion respecting the technical phases of trust law has taken such wide latitude, that it becomes a little difficult to orient one's self and to get back to the simple, fundamental question presented, namely, whether or not a trust relationship existed between the parties to this suit while they sustained the status of husband and wife, and during the period covered by the amended petition.

The plaintiff pleads and her testimony requires the interpretation that, upon the insistence of her husband that she could not save money and his representation that, if she would turn her earnings over to him, he would take them, save them for her, keep a record of every penny turned over and that she would get it all back, the plaintiff did then and thereafter throughout the years, regularly, turn over to him sums of money out of her earnings which upon demand he refused to restore to her. That her moneys were turned over to her husband is established by the books, which he kept up to a certain date, by entries therein, and by his admissions. Defendant denies that the terms under which he accepted the money created a trust relationship and asserts that he paid back to her all of the money which she had loaned to him, both principal and interest.

As to the trust question, the determinative factor is, whether or not the defendant received the moneys of the plaintiff charged with the beneficial interest of the plaintiff therein or whether he merely received them as her creditor, she having parted with all legal and beneficial interest.

Professor Vanneman, in his brief, states the law of the subject very well, in a quotation from Scott on Trusts, Vol. 1, Sec. 12.2. The characteristics of an express trust are further discussed by Professor Scott, Vol. 1, page 32, Section 2-2.3.

"* * * those responsible for the Restatement of Trust propose the following definition or description of an express trust:

'It is a fiduciary relationship with respect to property, subjecting the person by whom the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it.'

In this definition or description the following characteristics are to be noticed:

(1) A trust is a relationship;

(2) It is a relationship of a fiduciary character;

(3) It is a relationship with respect to property; not one involving merely personal duties;

(4) It involves the existence of equitable duties imposed upon the holder of the title to the property to deal with it for the benefit of another;

(5) It arises as a result of a manifestation of intention to create the relationship."

Much is said in the briefs of the necessity that it appear that there was a manifestation of an intention to create the trust relationship. This is found in the express language employed by the defendant, J. Frank Norris, in inducing the plaintiff to place her earnings with him. It was not necessary that the plaintiff express in terms an intention to create the trust relationship. An acceptance by conduct by her of the terms which in themselves proposed that the trust relationship be set up, is all sufficient. An express trust may be created even though the parties do not understand what a trust is, and whether or not so created may be determined from all the circumstances surrounding the transactions between the parties. Restatement of the Law of Trusts, Ch. 2, Secs. 23 and 24.

It has been urged that the plaintiff in a letter which she wrote to her attorney at Dayton did not understand the relationship existing between herself and her husband under which her money was placed with him. This certainly is not unusual. Now, that all the facts are developed and two courts, a referee and a special master, and counsel for the respective parties have devoted their best efforts to the facts of this case there is left, some considerable difference of opinion as to the true relationship between these parties.

It is likewise true, as contended, that an inference may be drawn, in the most favorable light of the facts to the defendant, that the relationship was nothing but that of debtor and creditor but, all in all, it clearly appears that it was more than such relationship. It is established that the relation was fiduciary in character and that, it was basically understood that the money which the plaintiff turned over to the defendant was by him to be held as hers and by him returned to her when desired and many times throughout the years so expressed by the husband.

Considerable attention is directed to the claim that the defendant asserted in his answer that he repaid to the plaintiff, with interest, all moneys which he received from her. It is then pointed out that this is an indication that the relationship was that of debtor and creditor. But, it should be observed, that the plaintiff at no place in her pleadings, nor in her testimony, asserts either that the defendant was to invest the money for her, or that he was to repay it to her with interest. The simple trust agreement which plaintiff asserts is that the defendant was to accept for her, hold, keep, and upon demand return her money. Of course, if the plaintiff at any time predicated her claim upon the proposition that her husband agreed to pay her interest on her money for his use of it, we would have an entirely different question.

The cited case of **Guardian Trust Co. et v Kirby, 50 Oh Ap 539,** admittedly is of value only because Judge Lemert at page 543 of the opinion announces the principle of law that,

"If one person pays money to another it depends upon the manifested intention of the parties whether a trust or a debt is created. If the intention is that the money shall be kept or used as a separate fund for the benefit of the payor, or a third person, a trust is created. If the intention is that the person receiving the money shall have the unrestricted use thereof, being liable to pay a similar amount whether with

or without interest to the payor or to a third person, a debt is created. The intention of the parties will be ascertained by a consideration of their words and conduct in the light of surrounding circumstances."

The case required no nice application of the principle announced and no fine distinction in determining that the deposit under consideration was not a trust fund but a general deposit. At the time the pass book of the prospective purchaser and his withdrawal receipt were filed in escrow with the trust department of the bank in which he had a savings account, there was no intention to change the status of his relationship to the trust company, if at all, until the title to the property which he was purchasing had been cleared. In the opinion, at page 543, Judge Lemert expressly says that the relationship between the parties at the time the contract was entered into continued, which relationship was that of debtor and creditor. This in itself was sufficient to support the judgment. The opinion goes further and cites cases to the effect that in any view of the transaction between the trust company and the depositor, the depositor's right would have risen no higher than general depositors. Citing particularly *McDonald, Admr. v Fulton, Superintendent of Banks, 125 Oh St 507*, Shoemaker v Hinze, 53 Wis. 116.

In Shoemaker v Hinze, 53 Wis. 116, 10 N. W. 86, the issue was whether or not the defendant had received $40.00 in money from the plaintiff as a bailment or if it was in the status of a loan or a general deposit. The defendant maintained that he received the identical money as bailee, and that his obligation as to due care had been observed and that he, therefore, was not liable for the money which presumably had been stolen. The Court held against the defendant and said that the uncontradicted evidence was that the plaintiff merely requested the defendant to take the $40.00 in money and keep it for the plaintiff and that he was liable as a debtor. There is nothing in the factual situation presented to indicate that anything was said or done at the time of the transaction to create a fiduciary relationship between the parties. If one goes to a bank and makes a deposit without any other or further understanding or agreement, obviously, he is a general depositor, although the bank may be said to have taken the money to keep for him.

Tucker v Linn (N. J. Eq.) 57 Atl. 1017. The question in this case delivered by the Vice-Chancellor orally is extended and goes somewhat afield of the question presented by the proof. Early in the opinion it is stated that "there is an entire failure of proof of that perfectly plain, simple, correctly stated equitable cause of action." The failure of proof is accounted for, in probability, by reason of the fact that the complainant was disqualified to testify in regard to statements made by the deceased, Linn, whom it was claimed was the trustee of plaintiff, or as to personal transactions between the plaintiff and the decedent. The Vice-Chancellor continuing says, that the meager testimony is to the effect that the plaintiff rendered services for decedent which were not gratuitous and that a part of these earnings were retained by the decedent, under an arrangement or understanding that he would pay interest, a better interest for the amount than the complainant could receive from the banks. Obviously, if the Vice-Chancellor had concluded his opinion at this point, he would have been amply supported in the judgment that the plaintiff had not established a trust in the funds held by the decedent at his death. Further along in the opinion the Chancellor cites the case of Gutch v Fosdick, 48 (N. J. Eq.) 353, arising in the same state as Tucker v Linn, where the court held that the language of an instrument constituted a trust, which language was as follows:

" 'I hereby certify that I hold in trust for Frances E. A. Gutch the sum of $4,000 for which I agree to pay interest at 5% per annum, and I promise to refund her the said $4,000 on demand.
$4,000                                        J. Erwin.' "

The Vice-Chancellor surmises that the reason for the construction of the instrument as a trust was, that there was manifested an intention of Erwin to hold the fund and to restore it to the settlor. The Vice-Chancellor then cites another case, Agens v Agens, 50 N. J. Eq. 566, wherein an instrument merely reciting that certain amount of money was deposited "in trust" for the depositor was nothing more than a note. The possible inconsistency in holding in the two cases is discussed but the conclusion is finally reached that the Vice-Chancellor does not have to reject the authority of Gutch v Fosdick to decide the case before the court. He very carefully, at page 1020 of the opinion, states that he does not

want to be misunderstood. That he is not dealing with a case where relationships of trust and confidence—fiduciary relationships of any kind whatever existed prior to the transactions under investigation. He points out that the parties dealt at arms length with each other.

**Richards v Parsons, 7 Oh Ap 422,** is, in most of its aspects, unfavorable authority to the appellant in this case. It must be conceded, however, that the facts there presented are not sufficiently alike those in the instant case to give the decision any particular value. It is interesting to note that the writer of the opinion, Judge Powell, concluded, which conclusion is carried into a syllabus, that a different rule prevails as to a trust in personal property, and the owner thereof can impress it with a trust by means and acts that would be wholly insufficient to impress a trust upon a title to land. Citing **Bruer v Johnson, 64 Oh St 7,** and Stickney v Stickney, 131 U. S. 227, 238. The court was dealing with presumptions which arise when a husband acquires possession of the separate property of his wife, with or without her consent, and it is held that in such situation the husband is deemed to hold the property in trust for the benefit of the wife in the absence of any direct evidence that she intended to make a gift to him. In the instant case, we have the terms under which the money of the plaintiff was turned over to her husband and the facts and circumstances attending the transactions between them.

**Kershaw v Snowden, 36 Oh St 181,** is cited as precisely in point on its facts in the instant case. We are unable to find enough of the facts in this case to conclude it is of any value whatever in determining any legal principle applicable to the facts appearing here. Judge White in the opinion quite early asserts, that the petition is framed upon the theory "that the plaintiff's cause of action is of an equitable nature, and that the relief to which she is entitled is the enforcement of an express trust." He then immediately, without stating any of the facts, concludes that the plaintiff misconceives the nature of the cause of action and of the rights of the parties, that no equitable trust is involved in the case, and that the real ground of action is, that the plaintiff placed certain money in the hands of the intestate of the defendant below which was to be repaid to him on her death. There is nothing to indicate any fiduciary relationship between the parties, any promise to preserve the fund and to return it, as such, to the plaintiff. All that the court does is to make the conclusion from the

facts, which are not set out, that a trust is not established.

**Weiser, Receiver, v Julian et, 15 Oh Ap 171.** As suggested in the brief there is nothing whatever in the fact pattern that is like the instant case. Judge Cushing at page 177 cites Kershaw v Snowden, supra, with approval but merely to effect that

"An express trust is not created by the receipt of money that was mingled with his own, and not paid over during the life of the deceased, but the relationship of debtor and creditor was created."

It certainly could not, with any confidence, be contended that such proof alone would support a declaration of express trust.

**Douglas v Corry, Extrx., 46 Oh St 349.** In this case the Supreme Court sustained the dismissal of the plaintiff's petition after a demurer thereto had been sustained. One ground of the demurrer was that the action pleaded was barred by the statute of limitations. If the action was at law the statute was operative. The Court held that it had application to bar the action. The view of the Court of the effect of the petition is succinctly stated by Chief Justice Minshall, at page 352 of the opinion, in this language:

"No equitable relief is required in this case; and the remedy adopted is a plain action at law for money had and received, and is not then a case of a continuing and subsisting trust cognizable only in equity."

The case is not authority to the effect that the plaintiff could not have declared upon a trust relationship but that she had not so framed her petition.

We have not considered and discussed all of the cases cited, but we have set forth enough of the authorities discussed in the briefs to establish, to our own satisfaction at least, that no violence is done to any principle of the law of trusts in adopting the finding of the Special Master in this case.

### THE MARRIAGE RELATION.

Considerable discussion is found in the briefs touching the effect of the marriage existing between the parties during the period of the transactions under consideration. It is

correct, that proof of the marital relationship in no sense establishes the fiduciary relationship essential to the establishment of a trust between the parties. But the marital status, in and of itself, implies a confidential relationship which is to be considered along with all the other circumstances, as it reflects upon the fiduciary relation and the ultimate question for determination, namely, what was the understanding between the parties and upon what condition was the money placed with defendant. We have no difficulty in finding that the husband and wife relationship is properly pleaded and proven and recognize full well that, it alone will afford no proof of any material element of the express trust alleged. What effect it would have in the light of all the circumstances, if the plaintiff was remanded to a suit based upon a constructive trust, we express no opinion.

The rights of the parties to this suit, the plaintiff and the defendant, J. Frank Norris, are determined by the issue drawn between them as to the existence of an express trust. Had the other party lived and the legal title to some of the property involved found to have been in her, there would, as pointed out by the Master, have been projected the question of a constructive trust, i. e., a trust ex maleficio, as to such property and to that extent, at least, it could have been so determined as the proper form of equitable remedy without any departure from the pleadings. Scott on Trusts, Sec. 461, 462; 12 Pom. Eq. Jur., Sec. 1053.

Numerous cases are to the effect that when, at the time of the transfer the transferee was in a confidential relationship to the transferor, and the transferor relied upon his oral promise to reconvey the land, he is chargeable as constructive trustee in the land for the transferor. McRae v McRae, (Ariz.) 294 Pacific 280, Brison v Brison, (Cal.) 17 Pacific 689, Jones v Jones, (Cal.) 74 Pacific 143. These cases are not apropos the issue drawn between the plaintiff and J. Frank Norris, but they do indicate the concept of equity as to the declaration of a trust in real estate predicated on nothing more than an oral promise to reconvey.

## EFFECT OF FRAUD.

Much has been said as to the effect of the fraudulent conduct of defendant, J. Frank Norris, which has been established and to which we have heretofore alluded. As we see it, it has no particular application on the question whether or

not an express trust is established between the plaintiff and defendant. Its principal effect, as the case is developed, is as it relates to the credibility to be given to the testimony of J. Frank Norris.

### EVIDENTIAL MATTER.

It is also urged in the briefs of appellant that, being conscious during the greater portion of her married life of the mistreatment of her husband toward her, it would be unnatural that the plaintiff would repose a trust in him whereby she would turn over a great part of her total earnings to him. This, of course, is proper argument but, after all, is not conclusive. It could as well be urged that she would not have turned her money over to her husband as her debtor, in view of his misconduct to which she testifies, but is admitted that she did, in some capacity, place thousands of dollars with him expecting its return.

### CONCLUSION.

We are satisfied that the plaintiff has established an express trust in the moneys which she turned over to her husband and that she is entitled to a decree to that effect in this Court and as prayed in her petition and that the report of the Master Commissioner to that effect should be confirmed, and the motion of defendant to disaffirm overruled.

We come now to consider the motion of the plaintiff-appellee to confirm the report in all particulars except as to the amount found due the plaintiff which she contends should be increased by the sum of $1740.00 covering the amount which she claims she paid to her husband under the trust agreement from January 1, 1935 to June 1, 1937.

The Master found against this claim for the reason, that the books which the defendant produced failed to show any credits received by him during the period under consideration and, therefore, the plaintiff's claim lacked sufficient corroboration.

In one view of the evidence the Master might be supported in his finding, but upon a consideration of all the facts in their relation one to the other, it is our judgment that the plaintiff has established that she made the payments in the sum of $60.00 per month during the period under consideration.

It appears that during all of the period, plaintiff was employed at an annual salary in excess of any such salary from 1921 to 1937 excepting one year, namely, 1928. There was no showing of changed trust relationship from 1935 to 1937 when

the parties separated and no proof of settlement between them. During that period the husband, though not employed, continued much of the time to make deposits in excess of the sum which plaintiff claims she advanced to him under their agreement, and in an amount which is most likely accounted for as having included the plaintiff's money. The defendant offers no reasonable explanation to account for all of the income which it appears he enjoyed during the years that he had no employment, was not engaged in business, and was in ill health.

The plaintiff testifies explicitly that during the years 1935, 1936 and 1937 up to the time of separation, she continued regularly to give to her husband the sum of $60.00 each month, and that she gave him an even amount so that she could keep a record of what he had. Unfortunately, she produces no such record. She also testifies that about five years prior to the time of taking her testimony before the referee in the Common Pleas Court, namely, August 15, 1938, her husband said that the sum total of her money which he had on hand was $7,000.

There is discrepancy between the amount which plaintiff claims she advanced in the years under consideration, as claimed in her petition, and as stated by her in her testimony. This is unfortunate and is the most damaging development as to plaintiff's credibility in the record. However, it must be kept in mind that counsel framed the pleadings at a time when the state of the account between the plaintiff and the defendant was nebulous and most uncertain.

In view of the support which the record affords as to the credibility of the plaintiff as to other disputed matters and because of the unreliability of defendant's testimony in the light of developments, it is our best judgment that the plaintiff's claim as to the $60.00 monthly payment for 1935, 1936 and 1937 up to the date fixed by her is correct and should be allowed.

This, then, will require that the motion of the plaintiff will be sustained and the report will be confirmed in all particulars, except as to the sum found due which will be increased to $9,641.92 with interest at 6% from December 24, 1937.

BARNES, P. J., and GEIGER, J., concur.