**In re LEE WAY HOLDING COMPANY, Debtor.**

**Frederick M. LUPER, Trustee, Plaintiff;**

v.

**ACTION INDUSTRIES, INC., et al.**

**Bankruptcy No. 2–85–00661.**

**Adv. No. 2–87–0089.**

United States Bankruptcy Court, S.D. Ohio, E.D.

April 10, 1990.

Frederick M. Luper, Columbus, Ohio, Chapter 11 Trustee.

Deborah P. Ecker, Luper, Wolinetz, Sheriff & Neidenthal, Columbus, Ohio, for plaintiff.

Dennis R. Wilcox, Climaco, Climaco, Seminatore, Lefkowitz & Garofoli Co., L.P.A., Cleveland, Ohio, for defendants.

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION**

DONALD E. CALHOUN, Jr., Bankruptcy Judge.

This cause came on for trial on February 6, 1990, on the Plaintiff's Complaint against Defendants, Teamsters Union Lo-

cals 135, 413, 637 and 957 and Truckdrivers Union Local 407. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the General Order of Reference entered in this District. This matter is a core proceeding under 28 U.S.C. § 157(b)(2). At the commencement of the hearing, counsel advised the Court that only certain transfers to Union Locals 135, 957 and 407 (collectively the "Defendants" or "Union Locals") remain at issue.

Prior to commencement of this Chapter 11 case, Commercial Lovelace Motor Freight, now known as Lee Way Holding Company ("Lee Way" or the "Debtor"), entered into a collective bargaining agreement (the "agreement"). The "dues check-off provision" of the agreement provided that union dues would be deducted from the employees' wages and forwarded by Lee Way to the local chapter/division of the union (Tr. 16). On March 7, 1985, Lee Way filed a Chapter 11 Bankruptcy petition and continued doing business for a short time. The Trustee seeks recovery in accordance with Section 549 of the Bankruptcy Code of three transfers made to the union locals by the Debtor after March 7, 1985 in payment of dues obligations incurred prior to March 7, 1985.

The first transfer, check No. 632411 (exhibit 1) payable to Truckdrivers Union Local 407 in the amount of $1,187.00, was dated February 28, 1985, but not negotiated until March 21, 1985. The check was payment of union dues for the week ending February 9, 1985 (Tr. 9). The second transfer was check No. 634846 (exhibit 2) payable to Teamster's Local 135 in the amount of $1,376.00. The check was paid by the bank on April 2, 1985, and was in payment of union dues for the week ending March 2, 1985 (Tr. 11). The third transfer was a check to Teamsters Local 957 in the amount of $702.00 (exhibit 3) in payment of union dues for employees of the Dayton office for the week ending March 2, 1985, and dues for employees of the Greenville office for the week ending March 9, 1985. The portion attributable to Dayton, $594.00, was all in payment of dues accrued prior to filing. The remainder, $108.00 attributable to Greenville, was only partially in payment of prepetition dues because filing occurred on the third day, March 7, 1985, of the five-day work week. The pre-petition portion of the $108.00 is $64.80. The total amount recoverable under Check No. 634851 is the sum of $594.00 and $64.80 which is $658.80 (Tr. 12).

The Defendant/union locals do not disagree that these three payments were postpetition transfers in payment of prepetition debt. Rather, they argue that the Debtor did not transfer property of the estate; rather, when the Debtor deducted the dues from its employees' wages, the Debtor held those funds in trust for the benefit of a third-party, the union locals. The Defendants allege that these monies were effectively held in constructive trust (Tr. 17–18). Additionally, the Defendants argue that Section 1113 of the Bankruptcy Code constrains the Trustee's authorization to recover the transfers under Section 549 of the Bankruptcy Code.

In order to properly analyze this first issue, a brief summary of the law of trusts is necessary. As the nature of a trust is equitable, *Fulton v. Gardiner*, 127 Ohio St. 77, 186 N.E. 724 (1933), determining whether a trust exists is a matter of state common law. *Jaffke v. Dunham*, 352 U.S. 280, 77 S.Ct. 307, 1 L.Ed.2d 314 (1957). In Ohio, there are two classifications of trust: express and implied. Within that classification, implied trusts are categorized as either resulting or constructive. *Hartwell v. Schlarb*, 16 O.L.Abs. 728, 729 (Ct.App. 1934), aff'd., 129 Ohio St. 493, 196 N.E. 273 (1935).

An understanding of *express* and *constructive* trusts is pertinent to the issue at hand. The often repeated characteristics of an express trust were originally stated by an Ohio court in *Norris v. Norris*, 40 O.L.Abs. 293, 57 N.E.2d 254 (Ct.App.1943), appeal dismissed, 142 Ohio St. 634, 53 N.E.2d 647 (1944), as follows:

(1) A trust is a relationship;

(2) It is a relationship of a fiduciary character;

(3) It is a relationship with respect to property; not one involving merely personal duties;

(4) It involves the existence of equitable duties imposed upon the holder of the title to the property to deal with it for the benefit of another; and

(5) It arises as a result of a manifestation of an intention to create the relationship.

A constructive trust, on the other hand, arises "where confidential relations exist but with persons and where some wrong has been done or fraudulent act committed which authorizes chancellor to declare a trust to prevent great injustice or fraud from being accomplished." *Koletich v. Rozman*, 17 O.L.Abs. 26, 29 (Ct.App.1934).

■ The Defendant alleges that the money the Debtor withheld from its employees' wages was held in constructive trust for the unions. (Tr. 17–18). "When property of an estate is alleged to be held in trust, the claimant has the burden of establishing the original trust relationship." 4 L.King, *Collier on Bankruptcy* para. 541.13 (15th ed.1988). In the absence of fraudulent conduct or wrongdoing, of which there is no evidence here, there can be no finding of a constructive trust.

Whether an express trust exists between the parties requires a greater analysis. According to the *Norris* case, a trust is a fiduciary relationship with regard to property that imposes equitable duties upon the holder of the property. There must also be some manifestation of intention by the parties to create this relationship. *Norris*, 40 O.L.Abs. at 300, 57 N.E.2d 254. The relationship between the Debtor and the Teamsters Union fails to meet two of the necessary requirements of an express trust. First, this relationship was not one of a fiduciary character, and second, there is no evidence of intent to form such a relationship.

A fiduciary relationship exists when a special confidence is bestowed upon one "who in equity and · good conscience is bound to act in good faith and with due regard to interests of one reposing the confidence." *Neagle v. McMullen*, 334 Ill. 168, 165 N.E. 605, 608 (1929). A fiduciary relationship is entered into purposefully and with knowledge.

In the case cited by the Plaintiff, *In re Columbia Packing Company*, 35 B.R. 447 (Bankr.D.Mass.1983), the debtor in Chapter 11 bankruptcy sought authority to pay dues to the union accrued prepetition, claiming that it could trace the funds. As in the instant case, the checkoff provision of the union contracts did not require that a separate fund be created nor was one created by the parties. The court held that the general cash account was clearly property of the estate.[1]

On the facts before this Court, the Debtor did not enter into a fiduciary relationship with the Union. There are no documents to support this nor was a specific fund generated primarily for holding these monies. The deducted funds were placed into a general account, not a special account specifically for union dues. There was no need nor intention to create any type of fiduciary relationship.

In examining whether there was an intention to create a trust, the facts in *In re Thornton*, 544 F.2d 1005 (9th Cir.1976) are very similar to those in the case before us and the Court's discussion is instructive. In *Thornton*, the debtor corporation had entered into a labor agreement that required the corporation to deduct money from its employees' wages and submit it to a vacation savings trust fund. On a few occasions, the corporation deducted the monies but failed to forward them to the trust fund. Upon commencement of the bankruptcy case, the referee in bankruptcy held these debts dischargeable. The trustee of the trust fund appealed arguing that the corporation, upon deducting certain amounts from employees wages, held those funds in a trust in a fiduciary capacity. *Id.* at 1006. In deciding whether or not an express trust had been created, the court

---

1. However, the Court recognized that the obligation represented a priority debt under § 507(a)(3) of the Bankruptcy Code. Therefore, the Court authorized the Debtor to make the payments, subject to the limits of § 507(a)(3).

Although the posture of the instant case differs from *Columbia*, the principle is equally applicable. Nor is it of great moment that this case predated § 1113 of the Bankruptcy code. The principle remains the same.

said that the labor agreement was contractual in nature:

It was part of a collective bargaining agreement negotiated between employer and employees dealing at arm's length. The only obligation assumed by the bankrupt was to pay contributions to the fund. The intent to create a trust as to monies in Thornton's hands and before payment to the Trustees is patently lacking here.

*Id.* at 1007.

In the case at hand, the Debtor paid the funds pursuant to the contract and the Trustee is attempting to recover them for the estate. The issue of whether an express trust is created, however, is the same. For the same reasons, and having considered the agreement before the Court, this Court finds that there was no intention on the part of either the Debtor or the Teamsters Union to create a trust for those deducted funds.

■ The second issue before the Court concerns the relationship between Section 1113, rejection of collective bargaining agreements, and Section 549, postpetition transactions. The Defendants argue the applicability of Section 1113(f) which provides:

(f) No provision of this title shall be construed to permit a trustee to unilaterally terminate or alter any provisions of a collective bargaining agreement prior to compliance with the provisions of this section.

The provisions to which subsection (f) refers require the Trustee to petition the Court for approval of a modification or rejection proposal. In this case, there was no modification or rejection of the collective bargaining agreement and failure to pay the deducted funds over to the union does not constitute rejection or modification within the meaning of § 1113; thus Section 1113(f) has no application in this context.

The payments made to the union locals following the filing of the bankruptcy petition were made pursuant to the collective bargaining agreement and in the ordinary course of business. Sometime thereafter, the collective bargaining agreement expired by its own terms. The Bankruptcy Code requires payment of prepetition amounts due under an executory contract only in the event of assumption of that contract under § 365, which was not done here. This subsequent action by the Trustee to recover these postpetition transfers for the estate is authorized by Section 549.

The cases to which the Defendants cite are simply inapposite. In both *In re Fiber Glass Industries,* 49 B.R. 202 (Bankr.N.D. N.Y.1985), and *In re Kentucky Truck Sales, Inc.,* 52 B.R. 797 (Bankr.W.D.Ky. 1985), the Trustee motioned the court for approval to reject the collective bargaining agreement because the struggling Chapter 11 corporation could not afford to continue payments under the agreement's present terms. *Triple A Coal Company, Inc.,* 55 B.R. 806 (Bankr.S.D.Ohio 1985) dealt with a secured creditor's interest in accounts receivable and the proceeds thereof. *In re MCF, Inc.,* 82 B.R. 40 (Bankr.S.D.Texas) addressed the debtor's interest in monies held in a *segregated* account. Here, the Trustee is retrieving monies belonging to the estate that were transferred following the filing of the Chapter 11 petition on account of prepetition debt.

Upon the foregoing, the Court finds the subject transfers avoidable under § 549. A separate Final Judgment in favor of the Plaintiff shall be entered as to Teamsters Union Locals 135 and 957, and Truckdrivers Union Local 407. The Court will await a stipulation of dismissal as to the other union locals.

IT IS SO ORDERED.