In re Deborah A. WILLIAMS, Debtor.

J. Bowers Construction
Co., Inc., Plaintiff,

v.

Deborah A. Williams, Defendant.

Bankruptcy No. 97–52537.
Adversary No. 98–5034.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

April 23, 1999.

Douglas D. Jones, Manos & Jones Co., Akron OH, for debtor-defendant.

John T. Waller, Akron, OH, for creditor-plaintiff.

### ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

MARILYN SHEA-STONUM, Bankruptcy Judge.

This matter is before the Court on the plaintiff's motion for summary judgment and the defendant-debtor's response. On October 14, 1998, the Court held an evidentiary hearing on a motion to dismiss the plaintiff's complaint filed by another named defendant, National City Bank.[1] At

---

1. On November 12, 1998, the Court entered an order granting National City Bank's mo-

the conclusion of that hearing, counsel for the plaintiff and the defendant-debtor indicated to the Court that, based upon the evidence then presented, the related issue of whether the debt owed to the plaintiff should be precluded from discharge pursuant to 11 U.S.C. § 523(a)(6) could be decided by dispositive motions. The Court then set a briefing schedule and, after several requested extensions by both parties, the matter was taken under advisement on March 12, 1999.

This proceeding arises in a case referred to this Court by the Standing Order of Reference entered in this District on July 16, 1984. It is determined to be a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I), over which this Court has jurisdiction pursuant to 28 U.S.C. § 1334. Based upon the plaintiff's motion for summary judgment, the defendant-debtor's response and the testimony and evidence presented at the October 14, 1998 hearing, the Court makes the following findings of fact and conclusions of law.

## I. FACTS

On July 26, 1994, a fire damaged the home of the defendant-debtor and her then-husband, Charles Williams. On August 1, 1994, the plaintiff provided the Williamses with an estimate for repairs in the amount of $54,513.49. On October 17, 1994, the plaintiff began repairing the Williams' home. On October 21, 1994, the defendant-debtor's insurance company issued a $45,087.17 settlement check to the joint payment of the plaintiff, the defendant-debtor and other related parties. That settlement check was then deposited into a National City Bank joint savings account which was opened in the name of Deborah Williams and Bob Motz. Mr. Motz, who is a vice president and senior estimator for the plaintiff, was not sepa-

rately identified by this relationship on the joint account.

Immediately after opening the account, $1,792.00 was jointly withdrawn to enable the defendant-debtor to make a past-due payment on her home. The parties agreed to leave the remaining $43,295.17 in the joint savings account for eventual payment to the plaintiff upon completion of the reconstruction work. The parties also agreed that the joint account would be set up so that the signatures of both the defendant-debtor and Mr. Motz would be required to make a withdrawal. Despite such an agreement and unbeknownst to either Mr. Motz or the defendant-debtor, the joint account was set up to permit withdrawals on an individual signature.

In January of 1995, the plaintiff completed the reconstruction project. Although the plaintiff contends that in March of 1995 it delivered a final bill to the defendant-debtor, the defendant-debtor denies that she ever received such a document. Due to increasing financial pressures and an impending foreclosure on her home, the defendant-debtor attempted to unilaterally withdraw funds from the joint savings account sometime during May of 1995. When her first attempt proved to be a successful one, the defendant-debtor continued to withdraw funds on her signature alone and eventually depleted all but $8.39 of the account proceeds through over 25 transactions. None of the withdrawn money was remitted to the plaintiff, and the plaintiff has never been paid for any of its repair work. On March 19, 1996, the defendant-debtor and her ex-husband sold their home.

On September 10, 1997, defendant-debtor filed a chapter 7 bankruptcy petition. The plaintiff was listed on defendant-debtor's schedules as the holder of an unsecured, nonpriority debt in the amount of $52,659.00. On February 13, 1998,[2] plain-

tion to dismiss the plaintiff's complaint against National City Bank because the Court concluded that it lacked subject matter juris-

diction to adjudicate the plaintiff's claim against the bank.

**2.** On December 23, 1997, the plaintiff filed a motion requesting until February 14, 1998 in

tiff filed a complaint against the defendant-debtor seeking to have a debt in the amount of $43,295.17 determined to be non-dischargeable pursuant to 11 U.S.C. § 523(a)(6). In that complaint, the plaintiff alleges that it was willfully and maliciously injured by the defendant-debtor's conversion of the proceeds in the joint savings account.

## II. DISCUSSION

■ A court shall grant a party's motion for summary judgment "if ... there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); FED.R.BANKR.P. 7056. The party moving for summary judgment bears the initial burden of showing the court that there is an absence of a genuine dispute over any material fact, *Searcy v. City of Dayton,* 38 F.3d 282, 286 (6th Cir.1994) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)), and, upon review, all facts and inferences must be viewed in the light most favorable to the nonmoving party. *Searcy v. City of Dayton,* 38 F.3d 282, 285 (6th Cir.1994); *Boyd v. Ford Motor Co.,* 948 F.2d 283, 285 (6th Cir.1991), *cert. denied,* 503 U.S. 939, 112 S.Ct. 1481, 117 L.Ed.2d 624 (1992). The issue of whether a debt should be discharged must be proven by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

■ Section 523(a)(6) of the Bankruptcy Code provides that a discharge under § 727 does not discharge an individual debtor from any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." When a debtor is found to have converted property, the debt created by that conver-

sion may, under certain circumstances, be excepted from discharge. Accordingly, whether or not the defendant-debtor converted the proceeds in the joint savings account is the determinative issue in this matter.

■ Conversion is the wrongful control or exercise of dominion over property belonging to another which is inconsistent with or in denial of the rights of the owner. *Baltimore & Ohio Railroad Co. v. O'Donnell,* 49 Ohio St. 489, 32 N.E. 476 (1892). In order to prove the tort of conversion, a plaintiff must demonstrate: (1) that the plaintiff owned or had a right to possess the subject property at the time of the alleged conversion; (2) that the defendant's alleged conversion was the result of a wrongful act or disposition of the plaintiff's property rights; and (3) that damage to the plaintiff occurred as a result of the alleged conversion. *Tabar v. Charlie's Towing Service, Inc.,* 97 Ohio App.3d 423, 427–28, 646 N.E.2d 1132, 1136 (1994).

***Whether the plaintiff owned or had a right to possess the proceeds in the joint savings account at the time of the alleged conversion:*** In her response, the defendant-debtor argues that the plaintiff never had a property interest in the joint savings account because the account was opened in the name of Bob Motz and not the plaintiff. The defendant-debtor also argues that at the time of the alleged conversion, the plaintiff did not have a right to possess the proceeds in the joint savings account because its right to payment was conditioned upon completion of the work and submission of a final bill to the defendant-debtor. The parties dispute whether a final bill was ever delivered to the defendant-debtor and the defendant-debtor claims that this dispute creates a genuine issue of material fact.[3]

---

which to file its complaint to determine dischargeability of a debt. On December 29, 1997, the Court entered an order granting the requested extension.

**3.** In her response, the defendant-debtor also claims that a dispute exists as to when the

plaintiff completed its repair work. *See* Response at unnumbered page 5 ("Motz claims the work was completed in January, 1995 ... [h]owever, Williams testified that work was completed in the spring or summer of 1995"). *See also* Response at unnumbered page 8. The

■ In this case, neither party has disputed that Mr. Motz was the plaintiff's employee-agent. Also, neither party has disputed that during all of his interactions with the defendant-debtor, Mr. Motz was acting within the scope of that employee-agent capacity or that the defendant-debtor was aware of his relationship to the plaintiff. Therefore, for purposes of analyzing liability as between the plaintiff and the defendant-debtor, the actions of Mr. Motz must be construed as the actions of the plaintiff.[4] *See First Nat'l Bank of New Bremen v. Burns*, 88 Ohio St. 434, 441, 103 N.E. 93, 95 (1913) (noting that when a duly authorized agent acts on behalf of the principal "[t]here if a full and complete merger of identity, a oneness in action and knowledge").

■ The defendant-debtor's other argument, that the plaintiff did not have a right to possess the proceeds in the joint savings account at the time of the alleged conversion because a condition to its right to payment was not met, is not relevant to the determination of this matter and acts only to divert attention from the fact that the joint account proceeds were being held in trust for the plaintiff.[5] A trust is "a fiduciary relationship which respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it." *Norris v. Norris*, 40 Ohio Law Abs. 293, 296, 57 N.E.2d 254, 258 (1943). That the parties did not themselves characterize the joint savings account as a trust does not preclude a finding that an express trust was created. An express trust may be created even though

defendant-debtor makes this argument because she claims that if the work was not completed until sometime after she withdrew the funds from the joint savings account, the plaintiff would not have had a property interest in those proceeds at the time of the alleged conversion. Such an argument is both without merit and disingenuous as in paragraph of 11 of her answer, defendant-debtor admitted that the repair work was completed in January, 1995. *See Ferguson v. Neighborhood Housing Services of Cleveland, Inc.*, 780 F.2d 549 (6th Cir.1986) (under federal law, stipulations and admissions in pleadings are binding upon the parties and the court).

4. Mr. Motz's failure to identify his employee-agent relationship on the joint savings account may be relevant in analyzing liability as between Mr. Motz or the plaintiff and a third party because, as a general rule, an agent acting for an undisclosed principal is personally liable to those with whom the agent deals, and the agent is not relieved from such liability by merely stating that an agency relationship exists unless the agent reveals the name of the principal. *See Givner v. U.S. Hoffman Machinery Corp.*, 49 Ohio App. 410, 197 N.E. 354 (1935). *See also* Ohio Revised Code § 1303.39 (which addresses the liability of agents who sign negotiable instruments on behalf of a principal). Such a situation is not, however, at issue in this matter.

5. In addition to not being relevant, this argument is also without merit. The issue of whether there was delivery of a final bill does not bear upon the defendant-debtor's obligation to pay the plaintiff because under well established Ohio law, a party who substantially performs under a contract is entitled to compensation for that performance and mere nominal or technical departures from the contract terms do not constitute a breach. *Ashley v. Henahan*, 56 Ohio St. 559, 47 N.E. 573 (Ohio 1897); *Ohio Farmers' Ins. Co. v. Cochran*, 104 Ohio St. 427, 434, 135 N.E. 537, 539 (1922); *Software Clearing House, Inc. v. Intrak, Inc.*, 66 Ohio App.3d 163, 583 N.E.2d 1056 (1990); *Kichler's, Inc. v. Persinger*, 24 Ohio App.2d 124, 265 N.E.2d 319 (1970). Departures from the terms of a contract that will not act to preclude recovery are those that are inadvertent or unintentional, are not due to bad faith and do not act to destroy the value or purpose of the contract. *See Ashley v. Henahan*, 56 Ohio St. 559, 569, 47 N.E. 573, 575 (1897); *Scott v. Crawford*, 9 Ohio Law Abs. 146, 150 (App.1930). Even assuming that delivery of a final bill was a condition to payment and that the plaintiff did not deliver that document, such a deviation from the terms of the parties' contract could not conceivably excuse the defendant-debtor from her obligation to pay for the reconstruction work. Tellingly, the defendant-debtor does not allege that the work was not performed as agreed, that the work was not performed in a timely manner or that she in any way suffered from not receiving the final bill.

the parties may not understand what a trust is, and whether it is so created will be determined from all circumstances surrounding the transaction. *Id.; In re Amos,* 201 B.R. 184, 186 (Bankr.N.D.Ohio 1996).[6]

In the case at bar, it is without dispute that although legal title to the joint account was held by both the plaintiff and the defendant-debtor, the proceeds in that account were being held for the plaintiff's benefit with disbursement to be made upon completion of the reconstruction work. Such a separation of the legal and beneficial ownership of property is an essential element to the creation of a valid, express trust. *See First Nat'l Bank of Cincinnati v. Tenney,* 165 Ohio St. 513, 518, 138 N.E.2d 15, 18–19 (1956). *See also Smith v. Francis,* 221 Ga. 260, 144 S.E.2d 439, 444 (1965) (requirement of separation of legal and beneficial title still met when sole beneficiary of trust is also one of multiple trustees).

Another essential element to the creation of a valid, express trust is an identifiable trust res. *First Nat'l Bank of Middletown v. Gregory,* 13 Ohio App.3d 161, 468 N.E.2d 739 (1983). In this case, the joint account proceeds were held in a separate account which was earmarked by the parties for a specific purpose. Further, the funds were not co-mingled with any other assets and the parties intended that they only be accessed by the written consent of both defendant-debtor and Mr. Motz. This segregation of and restriction on the funds further supports the conclu-

sion that the parties intended to create a trust and not merely a debtor-creditor relationship.

> If one person pays money to another, it depends upon the manifested intention of the parties whether a trust or a debt is created. If the intention is that the money shall be kept or used as a separate fund for the benefit of the payor, or a third person, a trust is created. If the intention is that the person receiving the money shall have the unrestricted use thereof, being liable to pay a similar amount whether with or without interest to the payor or to a third person, a debt is created.

*Norris v. Norris,* 40 Ohio Law Abs. 293, 57 N.E.2d 254, 259 (App.1943) (citing *Guardian Trust Co. v. Kirby,* 50 Ohio App. 539, 199 N.E. 81 (App.1935)).

Given the undisputed facts and circumstances surrounding the joint savings account, it is more probable than not that when that account was opened, a trust was established whereby the plaintiff and the defendant-debtor were co-trustees for the benefit of the plaintiff. Because the purpose of that trust was to preserve funds for payment to the plaintiff upon completion of the reconstruction project, the plaintiff's beneficial interest in those funds vested in January of 1995 when the reconstruction work was completed. Accordingly, the plaintiff had both a property interest in and a right to possession of the proceeds in the joint account when the alleged conversion occurred.[7]

---

**6.** As with the discussion regarding Mr. Motz's employee-agent relationship to the plaintiff (*see* pg. 403, *supra*), this discussion regarding creation of an express trust is limited in scope to analyzing liability between the plaintiff and the defendant-debtor only. The fact that the parties failed to identify that the proceeds in the joint savings account were being held in trust for the plaintiff could be relevant in analyzing liability as between the plaintiff or the defendant-debtor and a third party. *See, e.g., State ex rel. Fulton v. Main,* 128 Ohio St. 457, 191 N.E. 742 (1934) (as a general rule, the mere fact that funds deposited in a bank are held by the depositor in a fiduciary capac-

ity does not automatically impress upon them a trust in the hands of the bank so as to entitle the depositor to a preference in the event of the insolvency of the bank).

**7.** Even if it were determined that an express trust was not created, the plaintiff would have still acquired legal title to the entire balance of funds in the joint account through the application of a resulting trust. Such a trust arises in a situation where legal title to property is acquired by one who, given the facts and circumstances, was never intended to also enjoy the beneficial interest in the subject property. *First Nat'l Bank of Cincinnati v.*

*Whether the alleged conversion was the result of a wrongful act or disposition of the plaintiff's property rights:* Based upon a recent Supreme Court opinion, a debt will be nondischargeable only if it results from a deliberate and intentional injury and not merely from a deliberate and intentional act that leads to an injury. *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998).[8] As such, the "wrongful act" element in a § 523(a)(6) conversion claim must be analyzed in terms of whether both the act and any resultant harm to the plaintiff were intentionally caused by the defendant-debtor.[9] *See, e.g., First Liberty Bank v. LaGrone (In re LaGrone),* 230 B.R. 900, 904 (Bankr.S.D.Ga.1999) (noting that it is no longer enough that the debtor intentionally interfered with a creditor's collateral; the circumstances must now demonstrate that the debtor also intended the injury sustained by the creditor). As with the intent to act, the intent to also cause the resultant injury can be established by the showing of either a subjective motive to cause harm or an objective substantial certainty that the harm will occur. *Miller v. J.D. Abrams Inc. (In re Miller),* 156 F.3d 598 (5th Cir.1998), *cert. denied,* — U.S. —, 119 S.Ct. 1249, 143 L.Ed.2d 347 (1999).

In this case it is clear that the defendant-debtor intentionally withdrew the proceeds from the joint savings account and that when she did so, the plaintiff had the right to possess all of those funds as a payment for its services. After considering all of the other circumstances in this matter, it seems equally as clear that the defendant-debtor intended to cause the resultant injury to the plaintiff.

During the October 14, 1998 evidentiary hearing, the defendant-debtor explained that she began withdrawing the joint savings account proceeds during a time when she and her then husband were facing extreme financial hardship. When asked why she waited until May of 1995 to first attempt to access the account, the defendant-debtor explained that "[o]ur house was ready to be foreclosed. They had sent out a sheriff's notice demanding payment in full to National City Bank or they were going to take our house. . . . We were still waiting on a bill from the construction company and the money was still sitting in there so I tried to see what could happen so I could get our house out of jeopardy and it worked." *See* Docket Number 23 – October 14, 1998 Hearing Transcript at pg. 27. When questioned as to why she continued withdrawing the account proceeds the defendant-debtor responded that "Financially, we were [still] in really bad shape and when I found out I could take out money I used it to pay other bills. You know, we had another loan with National City Bank on business equipment. I used [the joint account proceeds] for that. Used it to cover payroll." *See* Docket Number 23—October 14, 1998 Hearing Transcript at pg. 38.

The record is devoid of any evidence that the defendant-debtor intended to replenish the funds in the joint savings account. However, given the bleak financial condition which precipitated her initial withdrawal of funds, coupled with the worsening financial situation that caused her eventual depletion of the account, objectively the defendant-debtor should have known with substantial certainty that she would never be able to replenish those

---

*Tenney,* 165 Ohio St. 513, 515, 138 N.E.2d 15, 17 (1956).

**8.** Despite the fact that the *Geiger* case was decided more than one year ago and despite the fact that it deals directly with the issue at hand, neither the plaintiff nor the defendant-debtor even mentioned its existence in their pleadings.

**9.** Although the validity of a creditor's claim is determined pursuant to state law, the issue of whether a debt is nondischargeable pursuant to § 523 is an independent question of federal law. *See Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

funds and that the plaintiff would never be paid for its services. Accordingly, it is more probable than not that the alleged conversion was the result of defendant-debtor's wrongful disposition of the proceeds in the joint savings account.

*Whether damage to the plaintiff occurred as a result of the alleged conversion*: Based upon the fact that the joint account was established to preserve funds to pay for the plaintiff's repair work, the plaintiff was clearly injured when the defendant-debtor withdrew those funds with no ability to replenish that account or otherwise compensate the plaintiff for its work. As such, it is clear that the plaintiff has been damaged as a result of the defendant-debtor's alleged conversion.

 In her response, the defendant-debtor attempts to argue that even if the plaintiff suffered damages from conversion of the joint account funds, those damages were the result of the plaintiff's own negligence in failing to promptly bill the defendant-debtor upon completion of the work and in failing to secure a right to payment through the filing of a mechanic's lien on the defendant-debtor's home. Pursuant to the Supreme Court's *Geiger* decision, claims supporting a finding of nondischargeability have been limited to those in the nature of intentional torts. *See Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998); *See also First Liberty Bank v. LaGrone (In re LaGrone)*, 230 B.R. 900, 904 (Bankr.S.D.Ga.1999); *Branch Banking and Trust Co. of Virginia v. Powers (In re Powers)*, 227 B.R. 73 (Bankr.E.D.Va.1998). Because relative fault of the parties is not a defense to an intentional tort and because the defendant-debtor has supplied no authority to support her "contributory negligence" argument, the Court finds that argument to be without merit.

## III. CONCLUSION

Based upon the foregoing, it is clear that no genuine issues of material fact exist in this case and that the defendant-debtor converted the proceeds in the joint savings account. Accordingly, the Court finds the plaintiff's motion for summary judgment to be well taken and hereby determines that $43,295.17 of the debt owing from the defendant-debtor to the plaintiff is nondischargeble pursuant to 11 U.S.C. § 523(a)(6). A separate judgment consistent with these findings of fact and conclusions of law will be entered.

**IT IS SO ORDERED.**